Robert Pierce v. Commissioner.
Pierce v. Commissioner
Docket No. 18871.
United States Tax Court
1949 Tax Ct. Memo LEXIS 43; 8 T.C.M. (CCH) 962; T.C.M. (RIA) 49260; October 25, 1949
*43 Ralph W. Barbier, Esq., for the petitioner. Thomas V. Lefevre, Esq., for the respondent. VAN FOSSAN Memorandum Opinion VAN FOSSAN, Judge: The respondent determined a deficiency in income and victory tax for the year 1943 in the amount of $7,947.59. The sole issue arises from the disallowance of a bad debt deduction of $12,197.62 claimed by petitioner in computing net income for 1942. Petitioner also alleges an error of $500 in respondent's computation whereby respondent increased petitioner's net income by the amount of $12,697.62 on account of the disallowance of the bad debt deduction instead of the amount of $12,197.62 actually claimed. Petitioner filed his tax returns for 1942 and 1943 with the collector of internal revenue for the district of Michigan. [The Facts] Petitioner was born in England but has lived in the United States since 1921. He was a chartered accountant in England and since coming to the United States has served as comptroller or treasurer of various companies, finally becoming comptroller and later, comptroller and treasurer of Briggs Manufacturing Company, which position he held until February, 1942. In this position he received a salary *44 ranging from $50,000 to $60,000 per year, and on leaving, received $20,000 as severance pay. In 1922 petitioner became acquainted with one S. B. Hosmer, whom he saw occasionally between 1922 and 1933. Some time in 1933 Hosmer came to the petitioner for the purpose of securing a small personal loan, which was granted by petitioner. From 1933 until 1935 petitioner made several advances to Hosmer varying in amount from $400 to $900, all of which advances Hosmer repaid to petitioner. In the spring of 1935 Hosmer went to petitioner to borrow money from him for the purpose of starting an underwriting insurance company. After negotiations, petitioner advanced to Hosmer the sum of $4,000 for the stated purpose. From December 1935 through November 17, 1941, petitioner made an aggregate of more than 70 advances of money to Hosmer, the total amounting to $12,197.62, of which $11,767.57 was made by checks and the balance in cash. Throughout the period from 1935 through 1941 Hosmer was interested in the formation of various insurance companies and in promoting operations in various coal fields. In this connection, he formed the State Guarantee and Accident Company of Indiana, at Evansville, *45 Indiana, and Old Covenant Life Insurance Company in West Virginia. All of the money advanced by petitioner was for traveling and promotional expenses in connection with the various enterprises or ventures. Petitioner had an oral understanding with Hosmer that petitioner should have the right to covert advances at par into investments in any of the ventures in which Hosmer was interested. Petitioner testified that he never elected to convert any of the advances into investments. After the first $4,000 had been advanced by petitioner to Hosmer to finance an insurance company the remaining advances were in relatively small amounts, ranging from $20 to $425, the majority of them being less than $100. Petitioner also bought stock in certain of Hosmer's ventures but the investments in such stock are not included in the figure of $12,197.62 above mentioned, although none of them were successful. When petitioner first began making advances to Hosmer no notes were taken as evidence of the indebtedness but later, in 1940, the advances theretofore made were aggregated and covered by a promissory note. As additional advances were made, a new note was given on different occasions to cover the *46 entire accumulated balance of the advances. Although these notes bore interest at six per cent, no interest was ever paid and accrued interest on preceding notes was never taken into account on any new note. Hosmer owned certain defaulted "Mexican bonds"which were not further described and the value of which was not proven. In 1942 the New York Trust Company, with which petitioner had an outstanding loan of $24,000, called the loan and required petitioner to make arrangement for repayment. In September 1942 petitioner discussed his financial situation with a lawyer, a former assistant and tax adviser to him, and was told to write the advances to Hosmer off as a bad debt in 1942, advising him that he would have to establish an identifiable event. Thereafter petitioner wrote Hosmer a letter asking him "is there any chance of you paying me at least some money on account?", etc. Some time later in 1942, petitioner offered Hosmer a job at a salary of $400 per month, which job Hosmer declined. Hosmer had never held a regular paying job during all the time petitioner knew him. In November 1942, Hosmer came to petitioner at the Detroit Athletic Club with regard to a project in which *47 he hoped to interest George Ball, a wealthy manufacturer of Muncie, Indiana. He was very poorly dressed at this time and petitioner outfitted him with some of his own clothes and advanced him $170 for use as expense money on the trip to Muncie to see Mr. Ball. Hosmer was never able to see Mr. Ball and the venture was wholly unsuccessful. The $170 item thus advanced was not included by petitioner in the bad debt herein claimed. Hosmer died February 11, 1947, at 73 years of age. He left nothing except insurance in the amount of $800. Hosmer was in poor financial circumstances from 1935 throughout the entire period of his relations with petitioner and until his death in 1947. Petitioner's expectancy of repayment of any advances to Hosmer after 1935 was conditioned upon the success of some one of Hosmer's ventures. The advances which petitioner made to Hosmer and the debt thereby accruing to petitioner were uncollectible throughout the several years preceding 1942 and the debt therefore was worthless prior to 1942. [Opinion] The sole question involved in this proceeding on the above facts and the supporting record is whether or not petitioner is entitled to a deduction from *48 gross income for the calendar year 1942 in the amount of $12,197.62 on account of the alleged worthlessness of the debt owing to the petitioner by Hosmer. Petitioner contends that there was a valid debt and that it became worthless during the calendar year 1942. The respondent supports his disallowance of the alleged bad debt contending, inter alia, that the advances were not loans but speculations; that petitioner and Hosmer were joint venturers; that petitioner never made any real effort to enforce collection of the advances; that petitioner failed to prove that the alleged debt had any value at the beginning of 1942 or that it became worthless in that year. On the record made, we have no alternative to sustaining respondent's position. There is considerable basis for respondent's argument that the advances were in the nature of speculations made by petitioner as a co-venturer with Hosmer. This fact it is not necessary to decide. The record in the case, viewed from any angle, fully sustains respondent's contention that the debt, if debt it was, was uncollectible and had no value at the end of 1941. In fact, in our opinion, the debt created by the advances in question was uncollectible *49 almost, if not precisely, from the date the advances were made. Hosmer, from the record in this case, could accurately be characterized as a chronic ne'er-do-well. Likewise, if we are to believe petitioner's testimony that he thought there was any chance through the several years preceding 1942 of collecting any part of the money advanced to Hosmer, he was an "incorrigible optimist." The number of advances, in small amounts from $20 to $50, convinces us that the petitioner in making such advances obviously to meet current living expenses of Hosmer, did not do so with a true business purpose and expectation of repayment. We are furthermore unable to agree with petitioner that any event occurred in 1942 which could be characterized under the law as an identifiable event on which a determination of worthlessness could be predicated. On the entire record we hold that petitioner has not proven respondent's determination to be in error. We therefore sustain respondent in this issue. Since petitioner alleges a mechanical and mathematical error in respondent's determination whereby the deficiency was stated in larger amount than actually existed, it will be necessary to have a recomputation *50 of the deficiency. Decision will be entered under Rule 50.